

$350.00

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ERNESTO LEONE, and ANGELO DUVA     :
         ,                       :
        **Plaintiffs**            :
                             :     **JURY TRIAL DEMANDED**
    **vs.**                       :
                             :
ANTHONY CATALDO,               :
                             :     07 3636
        **Defendants**           :     **No.**

## COMPLAINT

The Plaintiffs, by and through their attorney, ERNEST D. PREATE, JR.,

ESQUIRE, hereby bring Complaint against the Defendants and represents as follows:

### PARTIES

1.      The Plaintiff, Ernesto Leone, is a citizen of the United States who resides

at 1733 Stocton Road, Meadowbrook, Montgomery County, Pennsylvania.

2.      The Plaintiff, Angelo Duva, resides at 28 Cove Road, Moorestown, New

Jersey.

3.      The Defendant, Anthony Cataldo resides at 1018 Christina Court,

Endicott, Broom County, New York.

### JURISDICTION

4.      This Court has both personal and subject matter jurisdiction pursuant to

28 **U.S.C.** § 1332.

### APPLICABLE STATE LAW

1

5.    This action relates to an agreement signed by and between the Plaintiffs and Defendant Anthony Cataldo, which said agreement at paragraph 10(b) states that the Agreement shall be governed by the laws of the State of New York. A copy of said Agreement is attached hereto as Exhibit "A".

## FACTUAL ALLEGATIONS

6.    At all times materially relevant hereto, more specifically during the summer and fall of 2006, the Defendant, Anthony Cataldo, was the owner of a corporation entitled Cataldo Pizzeria & Restaurant, Inc, which comprised a business, and business furnishings and equipment known as Tony's Italian Grill, located at 2315 East Main Street in Endwell, New York.

7.    During the summer and fall of 2006, Defendant Anthony Cataldo advertised for sale in "Oggi", an Italian-American newspaper which is distributed multi-state, including in the greater Philadelphia region, a combination restaurant and pizza parlor business in upstate New York State.

8.    Said advertisement in "Oggi" stated that the restaurant/pizza parlor had gross revenues in excess of $60,000 per month.

9.    That the advertisements, which were seen by the Plaintiffs in Philadelphia, were through the listing agent of Remax; and when the Plaintiffs contacted the listing agent they were advised that the identity of the business for sale was Tony's Italian Grill at 2315 East Main Street in Endwell, New York, which was owned by one Anthony Cataldo.

10.    That the Plaintiffs undertook negotiations in both Philadelphia and Endwell, New York with Defendant Cataldo, regarding the purchase of Tony's Italian

2

Grill, and at all times during the negotiations, it was indicated to them that the business did a gross in excess of $60,000 per week, and that the Defendant would guarantee to them that the gross was in excess of $50,000 per week.

11.    That on October 6, 2006, the Plaintiffs met with Defendant Cataldo in Philadelphia, Pennsylvania, and entered into an agreement for the purchase of 100% of the stock of Cataldo Pizzeria and Restaurant, Inc., which was the corporate name of the business known as Tony's Italian Grill. A copy of said Agreement is attached hereto, made a part hereof and marked Plaintiffs' Exhibit "A".

12.    That said Agreement, in relevant part, contained the following provisions:

    a.  That the purchase price for the stock for Cataldo Pizzeria & Restaurant, Inc. was one million, one hundred thousand dollars ($1,100,000.00) with fifty thousand dollars ($50,000.00) payable at the time of signing of the agreement, five hundred thousand fifty dollars ($550,000.00) payable at closing and five hundred thousand dollars ($500,000) payable at six percent (6%) interest over a six year period amortized over six (6) years. Monthly payments to Anthony Cataldo would be in the amount of eight thousand, two hundred eighty-six dollars and forty-four cents ($8,286.44).

    b.  That at closing Defendant Cataldo would provide a balance sheet to Plaintiffs representing the assets and liabilities of the restaurant and that said liabilities are true and correct and that Defendant seller would hold harmless buyer for any liabilities not disclosed.

    c.  That Defendant Cataldo represented and warranted that the gross income of the restaurant was fifty-thousand dollars ($50,000.00) per week and

that, upon signing, Plaintiffs would have two weeks to verify said representation and seller would cooperate in enabling buyer to do so. If the representation proved to be false then the agreement could be cancelled.

d. All furnishings, fixtures equipment and supplies would remain with the restaurant.

e. Any accounts payable would be the responsibility of Defendant Cataldo.

13.    Said agreement also incorporated a Restrictive Covenant which stated that, with the exception of a restaurant in Owego using the name "Tony", the seller/Defendant would not for six years engage in any matter, paid or unpaid, in any activity or business venture anywhere within a ten (10) mile radius of Tony's Italian Grill nor entice any employee or customer of the business or employ any employees of the business in possession of trade secrets of the business. A copy of said Restrictive Covenant is attached hereto as Exhibit "B".

14.    That following the signing of the purchase agreement on October 6, 2006, the Plaintiffs did engage in efforts to determine the gross value of business done by Tony's Italian Grill including requesting to see copies of deposits or payments for sales taxes, copies of income tax records, checks to customer and cash register receipts.

15.    That the Plaintiffs, following the signing of the agreement, but before closing on December 1, 2006, went to the restaurant in New York numerous times to make themselves aware of the intricacies of the business and to verify the warranted fifty thousand dollar weekly sales receipts, and the Defendant's daughter, Cathy

Mediante, would refuse to provide the Plaintiffs with any of the information requested and would refuse to allow them access to the kitchen.

16.     That despite repeated requests, the only information that was provided by Defendant Cataldo to the Plaintiffs upon their visits to the restaurant was cash register tapes that were alleged to have come from the cash register that were folded over so that only the final total of sales for the day was listed.

17.     That these cash register tapes showed totals ranging from nine thousand dollars ($9,000.00) to fifteen thousand dollars ($15,000) per day.

18.     That Defendant Cataldo stated to the Plaintiffs that he did not wish to give the actual tape, allow the Plaintiffs to touch the tape, nor show anything but the total, because of his claimed "issues" with the Internal Revenue Service.

19.     That the Plaintiffs took over the business on December 1, 2006. At that time they found that none of the prior business records, including records of prior sales receipts, were in any of the computers or contained in any business ledgers or books left with the business.

20.     That the Plaintiffs learned that the Defendant had retained the Acme Cash Register Corporation in Binghamton, New York to remove from the computer the hard disks containing all of the past business information, including the records of past sales receipts.

21.     That ordinarily in the course of business, said information regarding past receipts and sales is provided to the buyer, but, in this case, the Defendant deliberately destroyed the business records in order to hide his misrepresentations regarding the amount of weekly sales receipts of the business.

5

22.     That the Defendant also did not provide to the Plaintiffs any of the food recipes for the business and the employees who were working for the business at the time of takeover on December 1, 2006 were not in possession of the recipes.

23.     That the Plaintiffs also paid to the Defendant the sum of forty thousand three hundred and seventy-five dollars and fifty-seven cents ($40,375.00) in cash.

24.     That several of the employees of Tony's Italian Grille were recruited and solicited by the Defendant to work in the Defendant's brother, Nicolo Cataldo's, restaurant, known as Nick's Restaurant, on 117 East Main Street in Endwell, New York and located less than one mile from Tony's Italian Grill.

25.     That at the time of the selling of the business to the Plaintiffs, Defendant Cataldo did not disclose to the Plaintiffs his involvement in the business of his brother Nicolo Cataldo, known as Nick's Restaurant.

26.     That, in order to pay the initial six hundred thousand dollars ($600,000.00) to purchase the business from Defendant Cataldo, the Plaintiffs had to take out a loan from Wachovia Bank.

27.     That pursuant to the terms of the Wachovia Bank loan, the Plaintiffs have been required to pay the sum of eight thousand two hundred dollars ($8,200.00) per month in loan payments, in addition to the eight thousand two hundred and eighty-six dollars and forty-four cents ($8,286.44) per month owed on the balance of the sales price on the business.

28.     That the Plaintiffs also are required to pay to Defendant Cataldo monthly the sum of eight thousand dollars ($8,000.00) to rent the premises on which Tony's

Italian Grill is located pursuant to a lease agreement which is attached hereto as Exhibit "C".

29.    That the Plaintiff's learned after the business was turned over to them that the corporate entity, Cataldo's Pizzeria and Restaurant, Inc., owed over several hundred thousand dollars to the State of New York in back sales taxes.

30.    That some two weeks after the takeover of the business on December 1, 2006, the Plaintiffs received a visit from a health inspector working for the Health Department of New York, who advised them that the equipment in the restaurant as well as the physical plant was not up to code, including having a broken refrigerator.

31.    That the Plaintiffs spent in excess of fifty-five thousand dollars in equipment and plant repair, so as to bring the business up to the New York codes.

32.    That following the filing of the 2006 tax returns, and receipt of the business taxes from the business's prior accountant, Michael Richard, the Plaintiffs learned that the actual gross receipts of the restaurant were less than forty-thousand dollars ($40,000.00) per week and not the sixty thousand dollars ($60,000.00) which had been advertised and the fifty thousand dollars ($50,000.00) which had been guaranteed in the sales agreement.

33.    That since the purchase of the business in December of 2006, the business has only grossed around thirty-five thousand dollars ($35,000.00) which has led to a net loss in the operations of the business of approximately seventy thousand dollars ($70,000.00) up through August 1, 2007.

**Count I**
**BREACH OF CONTRACT**

34.    Plaintiff hereby incorporates paragraphs one through thirty-three as though the same were fully set forth hereinafter at length.

35.    That the Plaintiffs have purchased all of the, fixtures and appliances of the business known as Cataldo's Pizzeria and Restaurant Inc., for the sum of one million, one hundred thousand dollars ($1,100,000.00) from Defendant, Anthony Cataldo.

36.    That pursuant to this contract, the seller, Anthony Cataldo warranted that the gross income of the business was fifty thousand dollars ($50,000.00) per week and further agreed to cooperate with the Plaintiffs in enabling them to verify this representation.

37.    That the Defendant has breached this contract in the following ways:

   a.  By providing false cash register receipts to the Plaintiffs in their course of investigating the truth of the guarantee of fifty thousand dollars weekly gross sales receipts;

   b.  By obstructing said investigation by refusing to allow the Plaintiffs access to the cash register or the kitchen area of the restaurant;

   c.  By withholding material information regarding liabilities of the restaurant;

   d.  By failing to provide them with the computer hard disks, which were part of the business purchased and included all of the financial records of the restaurant, thus delaying the Plaintiffs' discovery of the fraudulent misrepresentations regarding the gross sales of the business;

   e.  By failing to divulge the several hundred thousand dollar tax liability of the corporation at the time of selling;

f.  By violating the restrictive covenant agreement in participating in the business known as Nick's Restaurant, which is within a ten (10) mile radius of and is competitive with Tony's Italian Grill;

g.  By soliciting and enticing away employees and customers of Tony's Italian Grill to work in Nick's Restaurant.

38.  That the Plaintiffs have performed all the conditions of the contract required on their part, including the payment of monthly payments to the Defendant for the remaining five hundred and thousand dollars ($500,000.00) due and owing for purchase of the business.

39.  That the Defendant had a duty to deal fairly and in good faith with Plaintiffs.

40.  That the Defendant breached that duty of good faith and fair dealing.

41.  That the Plaintiffs allege damages in an amount in excess of eight hundred forty-five thousand three hundred and seventy-five dollars ($845,375.00) for Defendant's breach of contract as follows:

a.  The initial deposit of fifty-thousand dollars ($50,000.00)

b.  The payment at closing of five hundred and fifty thousand dollars ($550,000.00);

c.  Net business losses of seventy thousand dollars ($70,000.00) up through August 1, 2007;

d.  Lost profit for fraudulent warrantee in contract of eighty thousand dollars ($80,000.00).

9

e.  Fifty-five thousand dollars ($55,000.00) for equipment and physical plant repair to bring the business up to code as required by law.

f.  Forty thousand three hundred and seventy-five dollars ($40,375.00) for the business inventory.

g.  Aggravation, annoyance, harassment, inconvenience and discomfort they have been forced to undergo as a result of the actions of the Defendant in not providing recipes, soliciting employees and customers, bringing the restaurant up to code, obtaining business records and in sustaining a net weekly loss in the business.

WHEREFORE, Plaintiffs seek rescission of said contract and payment in an amount in excess of eight hundred forty-five thousand three hundred and seventy-five dollars ($845,375.00), plus costs and interest.

## Count II
## COMMON LAW FRAUD

42.    Plaintiff hereby incorporates paragraphs one through forty-one as though the same were fully set forth hereinafter at length.

43.    That the Defendant represented to the Plaintiffs, personally and in the advertisement placed in newspapers that the weekly sales receipts of the business known as Cataldo's Pizzeria & Restaurant, Inc. a/k/a Tony's Italian Grille were sixty-thousand dollars ($60,000.00) and warranted in the contract signed Octobe6, 2006 that the weekly sales receipts were fifty thousand dollars ($50,000.00).

44.    That the Defendant knew at the time of said representations that the weekly business sales receipts were less than forty thousand dollars ($40,000.00).

45.     That Defendant knew at the time that his representations to the Plaintiffs of weekly gross business receipts of sixty-thousand dollars ($60,000.00) were false and were made for the purpose of inducing the Plaintiffs into purchasing said business for the sum of one million one hundred thousand dollars ($1,100,000.00).

46.     That the Plaintiffs reasonably relied upon these misrepresentations and purchased one hundred percent of the stock in the business.

47.     That the Defendant further knew that because the business did not have the claimed sixty thousand dollar ($60,000.00) weekly sales receipts and that the equipment and physical plant were not up to code, that the Plaintiffs would lose money on the business be forced to close the business and default on the agreement to finance the remaining five hundred thousand dollar ($500,000) purchase price.

48.     That in furtherance of the fraud against the Plaintiffs, the Defendant also committed the following acts:

    a.   Providing the Plaintiffs with false cash register receipts;

    b.   Refusing the Plaintiffs access to the kitchen and cash register prior to the sale;

    c.   Removing the hard disk drives containing all the business records and sales receipts, thus delaying the Plaintiff's discovery of the fraud;

    d.   Refusing to turn over past tax returns.

49.     That because the representations made by the Defendant were false, the Plaintiffs were damaged in damaged damages in an amount in excess of eight hundred forty-five thousand three hundred and seventy-five dollars ($845,375.00) for Defendant's fraudulent conduct as follows:

a. The initial deposit of fifty-thousand dollars ($50,000.00)

b. The payment at closing of five hundred and fifty thousand dollars ($550,000.00);

c. Net business losses of seventy thousand dollars ($70,000.00) up through August 1, 2007;

d. Lost profit for fraudulent warrantee in contract of eighty thousand dollars ($80,000.00).

e. Fifty-five thousand dollars ($55,000.00) for equipment and physical plant repair to bring the business up to code as required by law.

f. Forty thousand three hundred and seventy-five dollars ($40,375.00) for the business inventory.

g. Aggravation, annoyance, harassment, inconvenience and discomfort they have been forced to undergo as a result of the actions of the Defendant in not providing recipes, soliciting employees and customers, bringing the restaurant up to code, obtaining business records and in sustaining a net weekly loss in the business.

WHEREFORE, Plaintiffs demand an unliquidated sum in excess of eight hundred forty-five thousand three hundred and seventy-five dollars ($845,375.00) from the Defendant plus punitive damages and interest and costs of this suit.

## Count III
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### DECEPTIVE ACTS OR PRACTICES

50.    Plaintiff hereby incorporates paragraphs one through forty-nine as though the same were fully set forth hereinafter at length.

51.    New York State General Business Law, § 349 (McKinney's General Business Law § 349) prohibits deceptive acts or practices in the conduct of any business trade or commerce in New York.

52.    The Defendant specifically violated § 349 by engaging in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding by deliberately and/or fraudulently deceiving the Plaintiffs as follows:

  a.  In advertising for buyers of the business claiming weekly gross receipts of sixty thousand dollars ($60,000.00).

  b.  In making personal representations to the Plaintiffs that the weekly gross receipts of Tony's Italian Grill were in excess of sixty thousand dollars ($60,000.00)

  c.  In falsely warranting in the sales agreement that the gross receipts of Tony's Italian Grill were in excess of fifty thousand dollars ($50,000.00) weekly.

  d.  In showing the Plaintiffs false cash register receipts which showed daily receipts in excess of nine thousand dollars ($9,000.00), which would result in weekly receipts of in excess of sixty thousand dollars ($63,000.00).

53.    That this deceptive advertising and producing of false cash register receipts were materially misleading in that the acts led the Plaintiffs to believe that the weekly receipts were far in excess of what they were, thereby causing the Plaintiffs

13

significant financial losses and damages in an amount in excess of nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) for Defendant's deceptive business practices as follows:

      a.  The initial deposit of fifty-thousand dollars ($50,000.00)

      b.  The payment at closing of five hundred and fifty thousand dollars ($550,000.00);

      c.  Net business losses of seventy thousand dollars ($70,000.00) up through August 1, 2007;

      d.  Lost profit for fraudulent representations of one hundred and sixty thousand thousand dollars ($160,000.00).

      e.  Fifty-five thousand dollars ($55,000.00) for equipment and physical plant repair to bring the business up to code as required by law.

      f.  Forty thousand three hundred and seventy-five dollars ($40,375.00) for the business inventory.

      g.  Aggravation, annoyance, harassment, inconvenience and discomfort they have been forced to undergo as a result of the actions of the Defendant in not providing recipes, soliciting employees and customers, bringing the restaurant up to code, obtaining business records and in sustaining a net weekly loss in the business.

      WHEREFORE, Plaintiffs demand an unliquidated sum in excess of nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) from the Defendant plus interest and costs of this suit, attorney's fees and punitive damages.

## Count IV
## FALSE ADVERTISING

54.    Plaintiffs hereby incorporate paragraphs one through fifty-three as though the same were fully set forth hereinafter at length.

55.    That the Defendants advertised for sale a combination restaurant pizza parlor, Cataldo's Pizzeria & Restaurant, Inc. a/k/a Tony's Italian Grille, in the city of Endwell, County of Broome and State of New York with gross receipts of sixty thousand dollars ($60,000.00) per week.

56.    That the actual weekly gross sales receipts of said restaurant and pizza parlor were only forty thousand dollars ($40,000.00) and not the advertised amount of sixty thousand dollars ($60,000.00).

57.    That this false advertising was misleading in a material respect in that the primary reason why the Plaintiffs purchased said restaurant and pizza parlor for the selling price of one million, one hundred thousand dollars ($1,100,000.00) was the advertised gross weekly sales receipts of said restaurant and pizza parlor of sixty thousand dollars ($60,000.00).

58.    That the Plaintiffs were injured as a result of this false advertising in an amount in excess of nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) for Defendant's false advertising as follows:

      a.  The initial deposit of fifty-thousand dollars ($50,000.00)

      b.  The payment at closing of five hundred and fifty thousand dollars ($550,000.00);

   c. Net business losses of seventy thousand dollars ($70,000.00) up through August 1, 2007;

   d. Lost profit for fraudulent representations of one hundred and sixty thousand dollars ($160,000.00).

   e. Fifty-five thousand dollars ($55,000.00) for equipment and physical plant repair to bring the business up to code as required by law.

   f. Forty thousand three hundred and seventy-five dollars ($40,375.00) for the business inventory.

   g. Aggravation, annoyance, harassment, inconvenience and discomfort they have been forced to undergo as a result of the actions of the Defendant in not providing recipes, soliciting employees and customers, bringing the restaurant up to code, obtaining business records and in sustaining a net weekly loss in the business.

WHEREFORE, Plaintiffs demand an unliquidated sum in excess of nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) from the Defendant plus interest and costs of this suit, attorney's fees and punitive damages.

## Count V
## INTENTIONAL MISREPRESENTATION

59.    Plaintiff hereby incorporates paragraphs one through fifty-eight as though the same were fully set forth hereinafter at length.

60.    That the Defendant represented to the Plaintiffs that the weekly gross sales receipts of the business known as Cataldo's Pizzeria & Restaurant, Inc. a/k/a Tony's Italian Grille were sixty-thousand dollars ($60,000.00)

61.    That the Defendant knew at the time of said representations that the weekly gross sales receipts of the business were less than forty thousand dollars ($40,000.00).

62.    That Defendant knew at the time that his representations to the Plaintiffs of weekly gross business receipts of sixty-thousand dollars ($60,000.00) were false and were made for the purpose of inducing the Plaintiffs into purchasing said business for the sum of one million one hundred thousand dollars ($1,100,000.00).

63.    That the Plaintiffs reasonably relied upon these misrepresentations and purchased the stock in the business.

64.    That because the representations made by the Defendant were false the Plaintiffs were damaged in an amount in excess of nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) for Defendant's fraudulent misrepresentation as follows:

   a.  The initial deposit of fifty-thousand dollars ($50,000.00)

   b.  The payment at closing of five hundred and fifty thousand dollars ($550,000.00);

   c.  Net business losses of seventy thousand dollars ($70,000.00) up through August 1, 2007;

   d.  Lost profit for fraudulent representations of one hundred and sixty thousand dollars ($160,000.00).

   e.  Fifty-five thousand dollars ($55,000.00) for equipment and physical plant repair to bring the business up to code as required by law.

f.  Forty thousand three hundred and seventy-five dollars ($40,375.00) for the business inventory.

g.  Aggravation, annoyance, harassment, inconvenience and discomfort they have been forced to undergo as a result of the actions of the Defendant in not providing recipes, soliciting employees and customers, bringing the restaurant up to code, obtaining business records and in sustaining a net weekly loss in the business.

WHEREFORE, Plaintiffs demand an unliquidated sum in excess of the nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) from the Defendant plus punitive damages and interest and costs of this suit.

## Count VI
## NEGLIGENT MISREPRESENTATION

65.     Plaintiff hereby incorporates paragraphs one through sixty-four as though the same were fully set forth hereinafter at length.

66.     That the Defendant represented to the Plaintiffs that the weekly gross sales receipts of the business known as Cataldo's Pizzeria & Restaurant, Inc. a/k/a Tony's Italian Grille were sixty-thousand dollars ($60,000.00)

67.     That the Defendant should have known at the time of said representations that the weekly gross sales receipts of the business were less than forty thousand dollars ($40,000.00).

68.     That Defendant should have known at the time that his representations to the Plaintiffs of weekly gross business receipts of sixty-thousand dollars ($60,000.00) were false and incorrect

69.     That the Defendant owed a duty to the Plaintiffs not to impart incorrect information to them regarding the gross receipts of the business.

70.     That the Plaintiffs reasonably relied upon these misrepresentations and purchased the stock in the business.

71.     That because the representations made by the Defendant were false and in correct the Plaintiffs were damaged in an amount in excess of nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) for Defendant's negligent misrepresentations as follows:

   a.  The initial deposit of fifty-thousand dollars ($50,000.00)

   b.  The payment at closing of five hundred and fifty thousand dollars ($550,000.00);

   c.  Net business losses of seventy thousand dollars ($70,000.00) up through August 1, 2007;

   d.  Lost profit for fraudulent representations of one hundred and sixty thousand dollars ($160,000.00).

   e.  Fifty-five thousand dollars ($55,000.00) for equipment and physical plant repair to bring the business up to code as required by law.

   f.  Forty thousand three hundred and seventy-five dollars ($40,375.00) for the business inventory.

   g.  Aggravation, annoyance, harassment, inconvenience and discomfort they have been forced to undergo as a result of the actions of the Defendant in not providing recipes, soliciting employees and customers, bringing the

restaurant up to code, obtaining business records and in sustaining a net weekly loss in the business.

WHEREFORE, Plaintiffs demand an unliquidated sum in excess of nine hundred twenty-five thousand three hundred and seventy-five dollars ($925,375.00) from the Defendant plus punitive damages and interest.

## Count VII
## BREACH OF IMPLIED COVENANT OF GOOD FAITH

72.    Plaintiffs hereby incorporate paragraphs one through seventy-one as though the same were fully set forth hereinafter at length.

73.    That the Defendant owed the Plaintiff a duty of implied covenant of good faith and fair dealing.

74.    That the contract between the Plaintiffs and the Defendant contained a clause that the Plaintiffs would have two weeks to investigate the Defendant's claim that the business had gross weekly sales receipts of fifty thousand dollars ($50,000.00) and that if the gross weekly sales receipts were not fifty thousand dollars ($50,000.00) they could have return of the fifty thousand dollar ($50,000.00) deposit.

75.    That the Plaintiffs attempted to investigate this claim by inspecting the restaurant kitchens and cash register during its hours of operation and requesting documentation of the gross weekly receipts.

76.    That Defendant's daughter, Cathy Mediante, would refuse to allow the Plaintiffs access to the office area, cash register or kitchen area of the restaurant claiming that they would have to talk to her father, Defendant Cataldo, about that.

77.    That the Defendant Cataldo willfully showed false register tapes indicating what would have been gross weekly receipts of in excess of sixty-thousand dollars ($60,000.00).

78.    That the Defendant breached his implied duty of good faith and fair dealing by showing the false cash register tapes and impeding the Plaintiffs' access to information about the business which would have helped verify whether the gross weekly receipts were in excess of fifty-thousand dollars ($50,000.00) thus unfairly and in bad faith impeding the Plaintiff's right under the contract to verify within two weeks the stated amount of weekly gross receipts.

79.    That the Plaintiffs were injured by this breach of duty in that they were placed in the situation of either forfeiting their deposit of fifty thousand dollars ($50,000.00) or proceeding with the sales based upon the cash register receipts.

80.    That the Plaintiffs in good faith believed that the cash register receipts provided to them by the Defendant indicating daily sales in excess of nine thousand dollars ($9,000.00) and thus weekly sales in excess of sixty thousand dollars ($60,000.00).

81.    That the breach of duty by the Defendant caused them to complete purchase of the sale and consequent payment of five hundred and fifty thousand dollars ($550,000) for fear of losing their fifty thousand dollar ($50,000.00) down payment.

82.    That as a result of completing the purchase for the sale of the restaurant and pizza parlor the Plaintiffs were damaged by the Defendant's duty of good faith and

fair dealing in an amount in excess of eight hundred forty-five thousand three hundred and seventy-five dollars ($845,375.00) as follows:

    a.  The initial deposit of fifty-thousand dollars ($50,000.00)

    b.  The payment at closing of five hundred and fifty thousand dollars ($550,000.00);

    c.  Net business losses of seventy thousand dollars ($70,000.00) up through August 1, 2007;

    d.  Lost profit for fraudulent warrantee in contract of eighty thousand dollars ($80,000.00).

    e.  Fifty-five thousand dollars ($55,000.00) for equipment and physical plant repair to bring the business up to code as required by law.

    f.  Forty thousand three hundred and seventy-five dollars ($40,375.00) for the business inventory.

    g.  Aggravation, annoyance, harassment, inconvenience and discomfort they have been forced to undergo as a result of the actions of the Defendant in not providing recipes, soliciting employees and customers, bringing the restaurant up to code, obtaining business records and in sustaining a net weekly loss in the business.

WHEREFORE, Plaintiffs seek rescission of said contract and payment in an amount in excess of eight hundred forty-five thousand three hundred and seventy-five dollars ($845,375.00), plus costs and interest.

Respectfully submitted,

By: _____

Ernest D. Preate, Jr., Esq.
Law Offices of Atty Ernest D. Preate, Jr.
Mellon Bank Building
400 Third Avenue, Suite 300
Scranton, Pa 18503
(570) 558-5970
PA Attorney ID # 08433