IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNESTO LEONE, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-3636 |
| | : | |
| ANTHONY CATALDO, | : | |
| Defendant. | : | |

August _11__, 2008                                                        Anita B. Brody, J.

MEMORANDUM AND ORDER

Plaintiffs Ernesto Leone and Angelo Duva bring this action against Anthony Cataldo for:
(1) breach of contract; (2) common law fraud; (3) violation of New York General Business Law
§ 349; (4) false advertising; (5) intentional misrepresentation; (6) negligent misrepresentation;
and (7) breach of implied covenant of good faith.  Cataldo moved to dismiss this case for lack of
personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper
venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer this
case to the Northern District of New York pursuant to 28 U.S.C. § 1404(a).  On March 19, 2008,
this Court held an evidentiary hearing on Cataldo's motion.

**I.  FACTUAL BACKGROUND**

Plaintiff Angelo Duva ("A. Duva") is from Moorestown, New Jersey.  Plaintiff Ernesto
Leone ("Leone") is from Meadowbrook, Pennsylvania.  Defendant Anthony Cataldo ("Cataldo")
is from Endicott, New York.

Around March 14, 2006, A. Duva purchased the newspaper Oggi in New Jersey.  In Oggi, A. Duva saw a real estate advertisement that listed the sale of several restaurants under the heading "Northern & Central New Jersey."  A. Duva was interested in one restaurant listed as a pizzeria/grill because the advertisement stated that it had a weekly gross income of approximately $60,000.  The advertisement provided a phone number and address for a real estate agency in Little Ferry, New Jersey.  A. Duva contacted the real estate agency and an agent informed him that the pizzeria/grill was called Tony's Italian Grill ("Tony's") and it was located in Endicott, New York.

Around the end of March or the beginning of April 2006, A. Duva and his brother, Mario Duva ("M. Duva"), visited Tony's.  During their visit to Tony's, A. Duva and M. Duva met with Cataldo, the owner of the restaurant.  At this meeting, A. Duva expressed his interest in purchasing Tony's and mentioned that he owned Marco Polo, a restaurant located in Elkins Park, Pennsylvania.  Cataldo and A. Duva discussed their experiences in the restaurant business and exchanged phone numbers.  After this initial visit, M. Duva visited Tony's on behalf of A. Duva between ten and twelve times before the sale of the restaurant was finalized.

On April 24, 2006, Cataldo and his wife visited Marco Polo in Elkins Park, Pennsylvania. Cataldo visited Marco Polo to ascertain whether A. Duva was capable of running a restaurant.  It was important for Cataldo to determine that the person who purchased Tony's could successfully operate a restaurant.  This was because the sale of Tony's would be self-financed and Cataldo's financial health would hinge on the buyer's ability to pay him.

While at Marco Polo, Cataldo met with A. Duva, his wife, and M. Duva for about two and a half hours.  During this visit, Cataldo and A. Duva discussed the sale of Tony's.  Cataldo

2

promised A. Duva that the restaurant's weekly gross income was approximately $60,000.  Based

on this revenue guarantee, A. Duva entered negotiations with Cataldo to purchase Tony's.  At the

Marco Polo meeting, A. Duva and Cataldo agreed that A. Duva would purchase the restaurant's

assets for $1.3 million with $50,000 to be paid upon execution of the sales agreement, another

$450,000 to be paid upon closing, and the remaining $800,000 to be paid over six years at 6%

interest.

Although A. Duva originally planned to purchase Tony's on his own, in May 2006, he

entered into an agreement with Leone to purchase the restaurant jointly.  After Leone became

partners with A. Duva, he made several visits to Tony's.  Additionally, Cataldo spoke frequently

to Leone on his cell phone regarding the sale of the restaurant.  Cataldo initiated many of these

calls to Leone, who received them in Pennsylvania.

In October 2006, Leone and A. Duva received sales and confidentiality agreements from

Cataldo.  They traveled to New York to give Cataldo the signed agreements and a $50,000

deposit.  The final sales agreement contained many of the same terms discussed during the April

2006 meeting in Pennsylvania, but some of the terms were modified.  First, the purchase price

was reduced to $1.1 million, including a $50,000 down payment upon execution, $550,000

payable at closing, and $500,000 payable at 6% interest over a six year period and amortized over

six years.  Second, A. Duva and Leone agreed to purchase the corporation rather than the

restaurant's assets.  Third, the warranty of weekly gross income was reduced to $50,000.

On November 30, 2006, A. Duva and Leone signed an agreement to lease the building

that housed Tony's.  On December 1, 2006, A. Duva and Leone closed the sale of Tony's.  On

December 29, 2006, A. Duva and Leone signed the Memorandum of Lease.  All of these events took place in New York.

## II.  PERSONAL JURISDICTION

According to Fed. R. Civ. P. 12(b)(2), a court must grant a motion to dismiss if it lacks personal jurisdiction.  "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  If no evidentiary hearing is held on the motion to dismiss, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Id.  "However, if the Court conducts an evidentiary hearing, the plaintiff has the more substantial burden of proving that personal jurisdiction is proper by a preponderance of the evidence."  Atiyeh v. Hadeed, No. 04-2621, 2007 U.S. Dist. LEXIS 19534, at *14-15 (E.D. Pa. Mar. 20, 2007).  See also Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999); Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

A court may have either general or specific personal jurisdiction over a nonresident defendant.  Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984).  Because Leone and A. Duva concede that the Court lacks general jurisdiction over the defendant, the only question is whether the Court has specific jurisdiction.   Specific jurisdiction exists "when the claim is related to or arises out of the defendant's contacts with the forum."  Id.

Usually, a court determines specific jurisdiction on a claim-by-claim basis.  O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 318 n.3 (3d Cir. 2007).  Claim specific analysis is

4

appropriate for analyzing a case with both contract and tort claims because "there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims . . . ." Remick v. Manfredy, 238 F. 3d 248, 255-56 (3d Cir. 2001).  However, claim specific analysis may not be necessary "for certain factually overlapping claims."  O'Connor, 496 F.3d at 318 n.3. See also Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union, 413 F. Supp. 2d 410, 417 (E.D. Pa. 2005) ("[W]here the considerations in analyzing jurisdiction do not differ between particular claims, a claim specific analysis is not necessary.").

A district court may exercise personal jurisdiction over nonresident defendants to the extent permissible under the law of the state in which the district court sits.  Fed. R. Civ. P. 4(e)(1).  Pennsylvania's long-arm statute allows a district court sitting in diversity to exercise jurisdiction over a nonresident defendant to the fullest extent permissible under the United States Constitution.  42 Pa. Cons. Stat. Ann. § 5322(b).  Therefore, the reach of Pennsylvania's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment.  Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

A two-prong test governs the due process limit to the exercise of personal jurisdiction. Id.  "First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum . . . .  Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'"  Id. at 150-51.

## A.  Minimum Contacts

To establish specific jurisdiction, a plaintiff must demonstrate that a defendant has the requisite "minimum contacts" with the forum such that the defendant could reasonably foresee

being haled into the forum's courts.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985).

"In determining whether minimum contacts are present, courts focus on 'the relationship among

the defendant, the forum, and the litigation.'"  <u>Gehling v. St. George's School of Medicine</u>, 773

F.2d 539, 541 (3d Cir. 1985) (quoting <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204 (1977)).  A

defendant has minimum contacts with a forum if he engaged in some purposeful contact with the

forum and the plaintiff's claims "arise out of or relate to" at least one of those contacts.

<u>O'Connor</u>, 496 F.3d at 318.  "The animating principle behind the relatedness requirement is the

notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable."  <u>Id.</u> at

322.

    According to the United States Supreme Court:

> The unilateral activity of those who claim some relationship with a nonresident
> defendant cannot satisfy the requirement of contact with the forum State . . . .  [I]t is
> essential in each case that there be some act by which the defendant purposefully
> avails itself of the privilege of conducting activities within the forum State, thus
> invoking the benefits and protections of its laws.

<u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  A determination of whether a defendant has

minimum contacts with a forum in a specific jurisdiction case requires "a fact-sensitive inquiry,

the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests.

With each purposeful contact by an out-of-state resident, the forum state's laws will extend

certain benefits and impose certain obligations.  Specific jurisdiction is the cost of enjoying the

benefits."  <u>O'Connor</u>, 496 F.3d at 323.  Jurisdiction is proper "where the contacts proximately

result from actions by the defendant *himself* that create a 'substantial connection' with the forum

State."  <u>Burger King</u>, 471 U.S. at 475 (emphasis in original).  While a single contact can support

jurisdiction if it creates a substantial connection with the forum, single or occasional contacts

6

related to the forum will not establish jurisdiction if they create only an "attenuated" affiliation to the forum.  Id. at 476 n.18.

**1.  Breach of Contract and Breach of Implied Covenant of Good Faith**

A. Duva and Leone allege that Cataldo breached the sales contract by providing false cash register receipts, withholding material financial information required for due diligence, and violating the restrictive covenant agreement.  A. Duva and Leone allege that Cataldo breached an implied covenant of good faith when he prevented them from performing due diligence during the two-week period guaranteed in the sales contract.  Because these are "factually overlapping claims," I analyze these claims together to resolve whether the Court has personal jurisdiction. O'Connor, 496 F.3d at 318 n.3.

To determine the existence of personal jurisdiction over a breach of contract claim, a court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick, 238 F.3d at 256.  A court should also look at "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." Gen. Elec. v Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

A single visit by a defendant to the forum "may provide the necessary minimum contacts with the forum if the contract that forms the basis of the suit was negotiated during that visit." George Young Co. v. Bury Brothers, Inc., No. 05-3353, 2004 U.S. Dist. Lexis 8985, at *13-14 (E.D. Pa. April 1, 2004).  However, physical entrance into the forum is not required because:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business

is transacted solely by mail and wire communications across state lines, thus
obviating the need for physical presence within a State in which business is
conducted.

Burger King, 471 U.S. at 476.  Therefore, communications sent by a defendant into the forum

either by mail or telephone can also count toward the minimum contacts required to establish

personal jurisdiction.  Grand Entm't Group v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.

1993) (holding that the court had personal jurisdiction over a breach of contract case in which the

defendants had not physically entered the forum, but had sent at least twelve telexes into the

forum and initiated twenty telephone calls with the plaintiffs in the forum regarding contract

negotiations).

An examination of the totality of the circumstances, as required by the Third Circuit in

Remick, reveals that Cataldo has sufficient minimum contacts with Pennsylvania for him to bring

his breach of contract and breach of implied covenant of good faith claims in this Court.  Cataldo

had several contacts with the forum, including a planned visit to A. Duva's restaurant, Marco

Polo, and several phone calls he initiated to Leone in Pennsylvania.

On April 24, 2006, Cataldo visited Marco Polo in Pennsylvania.  The purpose of his visit

to Marco Polo was to determine whether A. Duva was capable of running a profitable restaurant.

At this meeting, A. Duva and Cataldo began contract negotiations and Cataldo agreed to sell

Tony's to A. Duva.  Hence, Cataldo "purposefully avail[ed] [him]self of the privilege of

conducting activities within the forum State," when he chose to visit Marco Polo to investigate

A. Duva's business acumen and enter into contract negotiations for the sale of Tony's.  Hanson,

357 U.S. at 253.

Cataldo's single visit to Marco Polo on April 24, 2006 may be adequate to establish minimum contacts, but it is unnecessary to decide whether this visit alone is sufficient, because in addition to Cataldo's visit to the forum, Cataldo repeatedly contacted Leone by telephone in Pennsylvania.  As held in Grand Entm't, telephone calls initiated by a defendant into the forum assist in establishing minimum contacts.  When considering the totality of circumstances, Cataldo's visit and phone calls to Pennsylvania were instrumental in the formation of the contract.  Therefore, Cataldo's contacts are sufficient to establish minimum contacts with Pennsylvania over the breach of contract and breach of implied covenant of good faith claims.

**2.  Negligent Misrepresentation, Intentional Misrepresentation, and Common Law Fraud** [1]

A. Duva and Leone bring claims against Cataldo for intentional misrepresentation, negligent misrepresentation and common law fraud based on their allegations that Cataldo misrepresented the gross weekly income of Tony's and provided them with false financial documents that they relied on during the course of contract negotiations.  Because these are "factually overlapping claims," I analyze these claims together to resolve whether the Court has personal jurisdiction.  O'Connor, 496 F.3d at 318 n.3.

In Gehling, the Third Circuit addressed whether personal jurisdiction existed over the defendants who had fraudulently misrepresented to the plaintiffs the cause of death of their son.

---

[1] In Calder v. Jones, the Supreme Court applied the "effects test" to determine whether a court had personal jurisdiction over intentional tort claims.  465 U.S. 783 (1984).  The Third Circuit interpreted the Calder "effects tests" as a test to be used for intentional torts "to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process Test is satisfied." Imo Industries, Inc. v. Kiekert AG, 155 F.3d 254, 260 (3d Cir. 1998).   In this case, it is unnecessary to rely on the "effects test" in order to establish specific jurisdiction over the intentional tort claims of common law fraud and intentional misrepresentation because there are otherwise sufficient contacts necessary to establish minimum contacts.

773 F. 2d at 544.  This fraudulent misrepresentation was made to the plaintiffs while the defendants were in the forum state delivering the decedent's body.  Id.  The Third Circuit held that the defendants had minimum contacts with the forum because the cause of action arose from "defendants' in-state activities, and the defendants' misrepresentation."  Id.  As the Third Circuit concluded, "[h]aving traveled to Pennsylvania to return decedent's body, [defendants] clearly availed themselves of the 'privilege of acting within' Pennsylvania" and "with respect to this claim the [defendants] could reasonably have anticipated being haled into court in Pennsylvania . . . ."  Id.

On April 24, 2006, Cataldo visited A. Duva's restaurant, Marco Polo, in Pennsylvania and made the representation to A. Duva that Tony's had a weekly gross income of approximately $60,000.  Tony's weekly gross income was the main reason A. Duva was interested in purchasing the restaurant because this figure indicated that Tony's was profitable.  A. Duva relied on Cataldo's guarantee that Tony's had a weekly gross income of approximately $60,000 in making his decision to purchase Tony's.  A. Duva and Leone now allege that the $60,000 provided by Cataldo was incorrect.  This alleged misrepresentation forms a substantial basis for their claims against Cataldo for negligent misrepresentation, intentional misrepresentation, and common law fraud.

The $60,000 misrepresentation happened in Pennsylvania during a trip Cataldo willingly made to A. Duva's restaurant.  Cataldo visited Marco Polo to learn if A. Duva could run a successful restaurant.  Accordingly, Cataldo availed himself of the privilege of acting in the forum.  Additionally, as in Gehling, Cataldo made the misrepresentation while he was in the forum state.  Therefore, these claims arise out of or relate to Cataldo's contact with Pennsylvania

and Cataldo reasonably could have anticipated litigating these claims in Pennsylvania.

Furthermore, Cataldo enjoyed the benefits of the forum's laws when he visited Marco Polo to

investigate A. Duva's restaurant before entering into a contract with A. Duva.   As O'Connor

held, the cost of enjoying the benefits of a forum is specific jurisdiction.  Because the

misrepresentation was made in Pennsylvania and Cataldo had purposeful contacts with the

forum, Cataldo's contacts are sufficient to establish minimum contacts with Pennsylvania over

the negligent misrepresentation, intentional misrepresentation, and common law fraud claims.

### 3.  Violation of New York General Business Law § 349

A. Duva and Leone claim that Cataldo violated New York General Business Law § 349 by: (1)

advertising and making personal representations that Tony's had a weekly gross income of

$60,000; (2) warranting in the sales contract that the gross weekly receipts of the restaurant

amounted to approximately $50,000; and (3) providing false cash register receipts.  According to

New York General Business Law § 349, "deceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state are hereby declared

unlawful."  N.Y. Gen. Bus. Law § 349(a) (2008).  "[To] qualify as a prohibited act under the

statute, the deception of a consumer must occur in New York."  Goshen v. Bell Atlantic Corp., et

al., 774 N.E.2d 1190, 1195-96 (N.Y. 2002) (explaining that the legislative history reveals that the

statute was intended only to protect consumers in intrastate transactions and not to police the

interstate transactions of New York residents or companies).

In order for A. Duva and Leone to state a claim under New York General Business Law § 349,

Cataldo's deceptive acts had to occur in New York.  Even if each of the deceptive acts occurred

in New York, Cataldo has insufficient contacts with Pennsylvania to establish minimum

11

contacts.[2]   Minimum contacts require "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, 357 U.S. at 253.  A plaintiff must demonstrate that a defendant has the requisite minimum contacts with the forum such that the defendant could reasonably foresee being haled into the forum's courts. Burger King, 471 U.S. at 474.  Furthermore, specific jurisdiction exists only "when the cause of action arises from the defendant's forum related activities." North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990).

All of Cataldo's deceptive acts occurred in New York.  Cataldo did not engage in purposeful contact with Pennsylvania and he received no benefits or protections from the State.  Cataldo had no reason to expect that he would be haled into this Court for deceptive practices that occurred in New York.  The claim under New York General Business Law § 349 did not "arise from defendant's forum related activities." North Penn, 897 F.2d at 690.  Therefore, Cataldo does not have the minimum contacts required to establish personal jurisdiction in Pennsylvania and this claim is dismissed.

## 4.  False Advertising

A. Duva and Leone claim that Cataldo falsely advertised in Oggi that the weekly gross income of Tony's was approximately $60,0000.  According to the Third Circuit, advertisements that are not purposefully directed at a forum and that are published in a multi-state or national newspaper provide, "at best, tangential support for the assertion of personal jurisdiction."

---

[2] To the extent that this claim refers to deceptive acts that occurred in New Jersey or Pennsylvania, the claim fails as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).

Mesalic v. Fiberfloat Corp., 897 F.2d 696, 700 n.10 (3d Cir. 1990).  See also Colmen Fin. Servs. v. Charter Equip. Leasing Corp., 708 F. Supp. 664, 669 (E.D. Pa. 1989) (finding that an advertisement in a newspaper with multi-state circulation, distributed in the forum state, would be insufficient on its own to support specific jurisdiction).

Cataldo's advertisement in Oggi appeared under the heading "Northern & Central New Jersey" and provided a New Jersey real estate agency's contact information.  Also, A. Duva, a New Jersey resident, purchased the copy of Oggi containing the advertisement in New Jersey. The advertisement was not specifically directed at Pennsylvania or its residents.  Rather, the advertisement made clear that the restaurant for sale and the real estate agency responsible for the property were not located in Pennsylvania.   That Oggi is a newspaper with multi-state circulation is "at best, tangential support for the assertion of personal jurisdiction."  Mesalic, 897 F.2d at 700.  A. Duva and Leone fail to present any additional evidence that Cataldo had contacts with the forum as to the false advertising claim.  The multi-state circulation of Oggi is insufficient on its own to establish minimum contacts.  Therefore, Cataldo does not have the minimum contacts required to establish personal jurisdiction in Pennsylvania and this claim is dismissed.

**B**.  **Traditional Notions of Fair Play and Substantial Justice**

The Court must also determine whether the assertion of jurisdiction over Cataldo comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  In assessing whether jurisdiction offends traditional notions of fair play and substantial justice:

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.  It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 113 (1987).

"When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even serious burdens placed on the alien defendant." Id. at 114. "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." Grand Entm't, 988 F.2d at 483.  Once a plaintiff has established that the defendant has minimum contacts, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 417 U.S. at 477.   It is rare to have a case where jurisdiction is found unreasonable despite the establishment of minimum contacts.  O'Connor, 496 F.3d at 325.  "[W]hen minimum contacts exist, due process demands no more than a reasonable forum;" the forum does not have to be "the best forum—it may not even be a convenient one."  Id.

Cataldo has not presented a compelling case that this Court's assertion of jurisdiction over him fails to comport with fair play or substantial justice.  For example, Cataldo does not assert that litigation in Pennsylvania would create an undue burden financially or otherwise. There is no evidence that Cataldo's appearance in this Court would be so burdensome as to warrant depriving A. Duva and Leone of their chosen forum.  Accordingly, any potential burden imposed on Cataldo is outweighed by the interest of A. Duva and Leone in obtaining effective relief and the forum's significant interest in adjudicating fraudulent deceptions that occurred within state boundaries.   Even though this may not be the best or most convenient forum for

Cataldo, it certainly is a reasonable one.   Therefore, the Court's assertion of personal jurisdiction

over the claims for breach of contract, breach of implied covenant of good faith, negligent

misrepresentation, intentional misrepresentation, and common law fraud comport with traditional

notions of fair play and substantial justice.

Because A. Duva and Leone have established that Cataldo has the necessary minimum

contacts for these claims and that personal jurisdiction over them does not offend traditional

notions of fair play or substantial justice, this Court has personal jurisdiction over the claims for

breach of contract, breach of implied covenant of good faith, negligent misrepresentation,

intentional misrepresentation and common law fraud.  Therefore, I deny the motion to dismiss

for lack of personal jurisdiction as to these claims.

## III.  VENUE

According to Fed. R. Civ. P. 12(b)(3), a court must grant a motion to dismiss if venue is

improper.  Generally, when deciding a Rule 12(b)(3) motion to dismiss for improper venue, a

court must accept as true the allegations in the complaint, although the parties may submit

affidavits to support their positions.  Chester v. Beard, No. 07-4742, 2008 U.S. Dist. LEXIS

43087 (E.D. Pa. May 29, 2008); Byrd v. Johnston, No. 07-2963, 2007 U.S. Dist. LEXIS 91866,

at *5-6 (E.D. Pa. Dec. 14, 2007); Fellner v. Phila. Toboggan Coasters, Inc., No. 05-2052, 2005

U.S. Dist. LEXIS 23839, at *4 (E.D. Pa. Oct. 18, 2005).  In a motion to dismiss for improper

venue, the defendant bears the burden of showing that venue is improper.  Myers v. American

Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982).

"The test for determining venue is not the defendant's 'contacts' with a particular district,

but rather the location of those 'events or omissions giving rise to the claim . . . .'"  Cottman

Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).  According to 28 U.S.C.

1391(a), venue is proper in a diversity case only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

For venue to be proper in this case, the Eastern District of Pennsylvania must be "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred."

28 U.S.C. § 1391(a)(2).[3]  Under the current statute, venue can be appropriate in more than one

district.[4]  Cottman, 36 F.3d at 294.  According to the commentary following the 1990 revisions

to 28 U.S.C. § 1391(a)(2):

> The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too.  Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial.  Any other approach would restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard.  If the selected district's contacts are "substantial", it should make no difference that another's are more so, or the most so.

---

[3] In this Court, venue cannot be established under 28 U.S.C. § 1391(a)(1) because defendant Cataldo resides in New York.  Also, venue cannot be established under § 1391(a)(3) because this suit can be brought in the Northern District of New York.

[4] In 1990, Congress revised 28 U.S.C. § 1391 and removed the requirement that venue could only exist in the district "in which the claim arose" because it increased litigation and "failed to address the situation 'in which substantial parts of the underlying events have occurred in several districts.'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005).  The amended statutory language resulted from a recommendation by the Federal Courts Study Committee to expand transactional venue in order to decrease litigation over this issue.  Cottman, 36 F.3d at 294.

David D. Siegal, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A § 1391 (1993).

Although § 1391(a)(2) does not require a court to select the best forum, it does not permit a plaintiff to bring suit in an unlimited number of forums.  Cottman, 36 F.3d at 294.  "[T]he current statutory language still favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial'" and "is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."  Id.  Acts or omissions in the forum must be more than tangentially related to the claim in order to be substantial.  Id.  See also Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005) ("[F]or venue to be proper, significant events or omissions material to the plaintiff's claim[s] must have occurred in the district in question, even if other material events occurred elsewhere." (emphasis in original)).

To determine whether venue is proper, a court must examine the nature of the dispute. Cottman, 36 F.3d at 295.  See also Uffner v. La Reunion Francaise, 244 F.3d 38, 42 (1st Cir. 2001) (stating that a court deciding venue does "not [look] to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim.").  It is appropriate when determining venue for a court to ascertain which of the defendant's acts or omissions gave rise to the claim, and of those acts or omissions, which of them took place in the Eastern District of Pennsylvania.  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005).  See also Cottman, 36 F.3d at 295 (identifying the acts or omissions that gave rise to the claim and then determining whether a substantial part of those acts or omissions occurred in the district where the suit was filed); Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th

17

Cir. 2003) (asking (1) "What acts or omissions by [defendant] 'gave rise' to [plaintiff's] claim?" and (2) "Of those acts, did a 'substantial part' of them take place in [the district where the suit was filed]?").

The Second Circuit has characterized this analysis as qualitative rather than quantitative. Daniel, 428 F.3d at 432.  Venue is "determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  Id.  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too, is the substantiality necessary to support venue."  Id.  In determining whether a substantial part of the acts giving rise to a contract claim occurred in a district, a court should consider where the contract was negotiated, executed, and performed and where the breach occurred.  Bro-Tech Corp. v Purity Water Co. of San Antonio, Inc., No. 08-371, 2008 U.S. Dist. LEXIS 31541, at *2 (E.D. Pa. April 16, 2008) (citing 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3806.1 (3d ed. 2004)); Pulse Technologies, Inc. v. Dodrill, No. 06-4549, 2006 U.S. Dist. Lexis 88888, at *14 (E.D. Pa. December 7, 2006).

Cataldo argues that venue is improper because none of the events relating to the claims set forth in the complaint occurred in this district.  However, a qualitative review of this suit reveals that there are several substantial acts giving rise to the claims that occurred in the Eastern District of Pennsylvania.  First, Cataldo traveled to the forum on April 24, 2006 to negotiate terms of the contract with A. Duva and to conduct an inspection of A. Duva's restaurant, Marco Polo.  During his visit, Cataldo availed himself of a significant benefit of the forum when he

18

investigated A. Duva's ability to run a restaurant. Because Cataldo planned to self-finance the sale of Tony's, this information helped Cataldo to determine whether selling Tony's to A. Duva would be a prudent financial decision. Additionally, while at Marco Polo, Cataldo allegedly misrepresented to A. Duva that Tony's had a gross weekly income of $60,000, a number that was influential in their decision to purchase Tony's. Lastly, throughout the course of contract negotiations, Cataldo initiated many electronic communications with Leone, who was located in Philadelphia.

It is fair that Cataldo litigate these claims in this venue because of his substantial connections to the Eastern District of Pennsylvania. Venue is proper because a substantial part of the events giving rise to the claims occurred in the Eastern District of Pennsylvania. Therefore, I deny Cataldo's motion to dismiss for improper venue.

## IV. *FORUM NON CONVENIENS*

Cataldo moves to transfer this case to the Northern District of New York pursuant to 28 U.S.C. § 1404(a). According to 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of establishing the need for transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations omitted). If a plaintiff brings suit in his home forum, then his choice of forum is entitled to even greater deference. Piper Aircraft Co. v Reyno, 454 U.S. 235, 255-56 (1981).

A court deciding whether to transfer a case based on *forum non conveniens* must balance the "private and public interests protected by the language of § 1404(a)." <u>Jumara</u>, 55 F.3d at 879. "[T]here is no definitive formula or list of the factors to consider." <u>Id.</u>  Private interests that have been considered include:

> [P]laintiff's forum preference as manifested in the original choice; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses- but only to the extent the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records.

<u>Id.</u> (internal citations omitted).  <u>See also</u> <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947).

Public interests that have been considered include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two for a resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

<u>Jumara</u>, 55 F.3d at 879-80.  <u>See also</u> <u>Gulf</u>, 330 U.S. at 508-09.  "A defendant seeking dismissal on *forum non conveniens* grounds must show that the balance of the public and private factors 'tips decidedly in favor of trial in the foreign forum.'" <u>Windt v. Qwest Commc'ns Int'l, Inc.</u>, 529 F.3d 183, 192 (3d Cir. 2008).

The private interest factors favor a denial of transfer pursuant to *forum non conveniens*. A. Duva and Leone's choice of forum is the Eastern District of Pennsylvania and "should not be lightly disturbed," <u>Shutte</u>, 431 F.2d at 25, especially because Leone is a resident of the district and A. Duva owns a business in the district.  Additionally, the claims in this case arose from substantial events that occurred in this district, including a misrepresentation made by Cataldo

while he was visiting A. Duva's restaurant in Pennsylvania. There is no indication that transferring this case to the Northern District of New York would be more convenient to both parties. Cataldo would like to litigate in the Northern District of New York because it is physically closer to him; whereas, Leone and A. Duva would like to litigate in the Eastern District of Pennsylvania because it is physically closer to them. Cataldo has not demonstrated that he would suffer greater financial consequences if he was required to travel to Pennsylvania than Leone and A. Duva would suffer if they were required to travel to New York. According to the parties, witnesses reside in both New York and Pennsylvania. Cataldo has not presented the Court with any evidence that witnesses residing in New York would be unable or unwilling to travel to this district to testify. Finally, given the availability of modern technology, the possible location of records in New York is of limited significance. Therefore, the private considerations weigh in favor of retention of this suit in the Eastern District of Pennsylvania.

Additionally, the public interest factors strongly favor a denial of transfer pursuant to *forum non conveniens*. A judgment rendered here is equally as enforceable as one rendered by the Northern District of New York. There is no indication that litigating this case here would result in any more administrative difficulty or congestion than litigating it in the Northern District of New York. Additionally, there is no reason to believe that proceeding with this case in the Northern District of New York would be easier or less expensive, especially since two of the key witnesses, A. Duva and Leone, would have to travel to New York. Public policy and the Court's local interests weigh heavily against transfer because this Court has a significant interest in adjudicating a suit concerning a misrepresentation made during a visit to its district. The practical considerations also weigh heavily against transferring this suit. The Court has already

21

held an evidentiary hearing in this case and has spent a significant amount of time considering the factual intricacies of these claims.  Having already expended judicial time and effort up to this point, it would not be an efficient or prudent use of judicial resources to transfer this case to a new district court.  Lastly, the Northern District of New York is in a neighboring circuit and this Court has handled various New York state law issues.[5]  Accordingly, the public interest factors favor retention of this suit in the Eastern District of Pennsylvania.

Because the balance of private and public interest factors tips strongly in favor of Leone and A. Duva, I deny Cataldo's motion to transfer based on *forum non conveniens*.

---

[5] The contract provides that New York state law governs the agreement.

22

## ORDER

**AND NOW,** this _11th___ day of August 2008, it is **ORDERED** that Defendant Anthony Cataldo's Motion to Dismiss Plaintiff's Second Amended Complaint or, Alternatively, to Transfer Action (Doc. #20) is **GRANTED** in part and **DENIED** in part:

Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is **GRANTED** as to Count III (violation of New York General Business Law § 349) and Count IV (false advertising) and these claims are **DISMISSED**.

Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is **DENIED** as to Count I (breach of contract), Count II (common law fraud), Count V (intentional misrepresentation), Count VI (negligent misrepresentation), and Count VII (breach of implied covenant of good faith).

Defendant's motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) is **DENIED**.

Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED**.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to:

23